















KAJ   1/12/06    9:38
3:06-CV-00025   DPR CONSTRUCTION INC V. ANKA (CORTEZ HILL)
*3*
*AMDCMP.*

1   RICHARD E. MCCARTHY [SBN 106050]
    RMcCarthy@swsslaw.com
2   DANIEL E. GARDENSWARTZ [SBN 169749]
    DGardenswartz@swsslaw.com
3   ELIZABETH C. PIETANZA [SBN 233538]
    EPietanza@swsslaw.com
4   SOLOMON WARD SEIDENWURM & SMITH, LLP
    401 B Street, Suite 1200
5   San Diego, California 92101
    Telephone: (619) 231-0303
6   Facsimile: (619) 231-4755

7   Attorneys for Plaintiff DPR CONSTRUCTION,
    INC., a California Corporation

**FILED**

JAN 11 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

8

9           **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12   DPR CONSTRUCTION, INC., a California corporation,, | CASE NO. 06CV0025 R JMA |
| 13 | |
|         Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| 14 | |
| v. | **(1) BREACH OF ORAL CONTRACT;** |
| 15 | |
| ANKA (CORTEZ HILL) LLC, a Delaware | **(2) BREACH OF ORAL MODIFICATION TO WRITTEN CONTRACT; and** |
| 16   limited liability company; ANKA PROPERTY GROUP, an entity of unknown | |
| 17   form; and ANKA DEVELOPMENTS, INC, a Delaware corporation, | **(3) NEGLIGENT MISREPRESENTATION** |
| 18 | **DEMAND FOR JURY TRIAL** |
|         Defendants. | |
| 19 | |

20      Plaintiff alleges as follows:

21                      **PARTIES**

22      1.     Plaintiff DPR CONSTRUCTION, INC. ("Plaintiff" or "DPR") is, and at all times

23   relevant was, a corporation organized and existing under the laws of the State of California

24   with its principal place of business in San Diego, California.

25      2.     DPR is informed and believes, and on that basis alleges, that defendant ANKA

26   (CORTEZ HILL) LLC ("ANKA-CH") is, and at all times relevant was, a limited liability

27   company organized and existing under the laws of the State of Delaware, with its principal

28   place of business in the State of California and the County of San Diego.

3. DPR is informed and believes, and on that basis alleges, that defendant ANKA PROPERTY GROUP ("ANKA-PG") is, and at all times relevant was, an entity of unknown form and doing business in the State of California and the County of San Diego.

4. DPR is informed and believes, and on that basis alleges, that defendant ANKA DEVELOPMENTS, INC. ("ANKA-DI") is, and at all times relevant was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Washington.

5. Defendants ANKA-CH, ANKA-PG and ANKA-DI are sometimes collectively referred to as "Defendants."

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C.A. § 1332 because this is a dispute between a citizen of a state and a citizen of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue in this District is proper under 28 U.S.C. § 1391 because a substantial number of the material events giving rise to this claim occurred in this District, Defendant entered into the Agreement on which this action is based in the State of California, has minimum contacts with California, and is subject to personal jurisdiction in this District. This venue has also been chosen in the Agreement referred to below and upon which this action is based.

## PRELIMINARY ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. Defendants ANKA-PG and ANKA-DI are involved in the construction and development of several high rise condominium projects, including a project located in the Gaslamp District of San Diego, known as the "Alta Project," and another located at the corner of 9th and Ash, also in downtown San Diego, known as the "Aria Project." Plaintiff is informed and believes, and on that basis alleges, that ANKA-PG and ANKA-DI formed an entity known as ANKA (Gaslamp) LLC to develop the Atla Project and formed ANKA-CH to develop the Aria Project.

9. Beginning in the summer and into the fall of 2004, DPR and Defendants

engaged in negotiations to establish the terms and conditions of Defendants' contracts with

DPR, in which DPR would act as the general contractor for both the Alta and Aria Projects.

        10.    On or about October 25, 2004, DPR entered into a letter of intent with ANKA

(Gaslamp) LLC for the construction of the Alta Project. That letter of intent stated a

construction price of $46,700,000 for the Alta Project's 21-story building. DPR and

Defendants had arrived at this price based on an express understanding that DPR would

reduce its contract price by the amount of $473,000 if DPR also became the general

contractor for the Aria Project, thereby gaining further economic leverage with its

subcontracts as the builder of that project. An "Exhibit A" to DPR and ANKA (Gaslamp)

LLC's letter of intent for the Alta Project expressly reduced the contract price by $473,000

for the "Aria factor saving across remaining board." This $473,000 price reduction, in light

of DPR's anticipated role as the general contractor in the Aria Project, has been referred to

by DPR and Defendants in their negotiations as the "Aria Factor."

        11.    On or about October 25, 2004, DPR and ANKA-CH entered into a pre-

construction agreement for the development of the Aria Project (the "Pre-construction

Agreement"). Under the terms of the Pre-construction Agreement, DPR was to provide

various preconstruction services to ANKA-CH for the Aria Project. The Pre-construction

Agreement expressly stated the parties' intent "to enter into a mutually agreed Guaranteed

Maximum Price (GMP) contract" for the Aria Project, however, ANKA-CH also "reserved the

right to terminate DPR's services at any time and for any reason." A true and correct copy of

the original Pre-construction Agreement is attached to this complaint as Exhibit 1.

        12.    In or about mid-December, 2004, a meeting between DPR and Defendants

occurred regarding, among other things, the Alta Project and the Aria Factor, at Defendants'

San Diego office. At that meeting, all parties agreed and understood that the purpose and

nature of the Aria Factor was to provide Anka (Gaslamp) LLC with a discount in the amount

of $473,000, so long as DPR also became the general contractor on the Aria Project and

giving DPR further leverage with its subcontractors.

        13.    Also in mid-December of 2004, DPR and Defendants met to finalize and sign

the formal construction contract for the Alta Project. But upon review of that agreement, DPR noticed that, contrary to the signed letter of intent, the $473,000 discount reflected in the final contract price did not also reflect that DPR provided this discount contingent upon its selection as the general contractor on the Aria Project.

14.    When DPR identified this omission, Defendants and ANKA (Gaslamp) LLC, explained that they could not or would not include that contingency in the final construction contract, based on their concern that adding the Aria Factor contingency into the previously approved construction documents might cause their construction lender on the Alta Project to withdraw or delay its approval. At that point in time, Defendants were putting immense pressure on DPR to sign the Alta construction contract by year end, due to the requirements set forth by Defendants' lenders.

15.    DPR worked vigorously to expedite the finalization of the Alta construction contract on Defendants' behalf. Throughout this process, and on multiple occasions, Jay Leopold of DPR made it explicitly clear to Defendants' representatives, including without limitation Joshua Hanna and Andrew Stringer, that the absence of a contingency, under which DPR would recover the Aria Factor discount if it was not selected as the Aria Project general contractor, remained an impediment to final execution of the Alta construction contract. This initially occurred at a meeting on or about October 7, 2004, when the Aria Factor discount was originally offered.

16.    At a meeting on or about December 13, 2004, Defendants reconfirmed their understanding and agreement that the Aria Factor discount was contingent upon DPR's appointment as the Aria Project general contractor. However, in order to expedite the Alta construction contract and not disturb the prior approval of Alta's lender, Defendants suggested that the Aria Factor contingency remain excluded from the Alta construction contract, and instead be included as an amendment to the Aria Pre-construction Agreement. Specifically, Defendants suggested that the Pre-construction Agreement be modified so that DPR would be entitled to a termination fee of $473,000 (i.e., the amount of the Aria Factor discount) if Defendants ultimately chose not to proceed with DPR as the general contractor

for the Aria Project. In order to ensure that they had authority to amend the Pre-construction Agreement in this manner, Joshua Hanna and Andrew Stinger further agreed to confirm that this plan would be acceptable to their superiors in Australia.

17. Shortly thereafter, Defendants and DPR participated in a telephone conference call, wherein DPR and Defendants again orally agreed to modify the Aria Pre-construction Agreement. Specifically, Defendants agreed that in addition to the $62,000 DPR was eligible to receive in exchange for its pre-construction services on the Aria Project, DPR would also receive $473,000 if, despite DPR's good faith efforts, DPR did not become the general contractor for the Aria Project (the "Aria Factor Agreement").

18. At the time Defendants and DPR entered into the Aria Factor Agreement, Defendants expressly represented to DPR that: (1) DPR would be entitled to recoup the $473,000 if DPR was not selected as the general contractor on the Aria Project; (2) the Aria Factor Agreement had been approved by senior management at ANKA-PG and/or ANKA-DI; and (3) the parties would confirm their oral agreement in writing after the year-end holiday season (the "Aria Factor Representations").

19. As a gesture of good faith, and based specifically on each of the Aria Factor Representations, DPR executed the Alta construction contract and agreed to prepare a written modification to the Aria Pre-construction Agreement after the new year.

20. In January of 2005, DPR presented to Defendants the Aria Factor Agreement in writing. On or about February 1, 2005, Defendants refused to sign any written agreement consistent with the Aria Factor Agreement and the Aria Factor Representations. Instead, Defendants threatened to terminate the Pre-construction Agreement in its entirety if DPR did not immediately deliver its GMP proposal.

21. In an effort to render moot this impasse, in order to meet its commitment to Defendants in providing a timely and good faith proposal, and after working diligently with its subcontractors and suppliers, DPR provided Defendants with a Guaranteed Maximum Price ("GMP") proposal for the Aria Project on February 4, 2005, in the amount of $50,211,471. Defendants, however, insisted on a price that was less than $48,000,000.

22.    For the ensuing five months, DPR worked diligently to find ways to reduce its proposal to a price acceptable to Defendants. This included significant value engineering (recommended changes in scope, systems and materials, to reduce project costs), as well as renegotiations with DPR's subcontractors. Defendants in the meantime made several modifications to the Aria Project drawings, which also impacted DPR's ability to further reduce its offer and instead created price increases. After digesting approximately $700,000 in price increases due to all of Defendants' changes to the Aria Project drawings, working with various subcontractors, engaging in substantial value engineering analysis, and making required adjustments for the impacts associated with expired subcontractor bids, DPR provided a revised GMP proposal to Defendants in the amount of $48,820,809. DPR further suggested that if this significantly reduced proposal was still unacceptable to Defendants, then DPR was willing to modify the proposed contract from that of a "GMP" to a "Lump Sum" contract in exchange for a further reduction of $350,000 in the contract price. DPR further explained that while it is typically opposed to lump sum contracting (because it is typically done in a competitive and non-collaborative manner), it had already developed its current GMP in a very transparent and collaborative manner, providing Defendants with full disclosure of every aspect of the budget.

23.    In response to DPR's alternative "Lump Sum" offer in the amount of $48,470,809, Defendants instead offered to proceed on the basis of a "Lump Sum" contract amount of $47,800,000; $670,809 less than DPR's best offer. Further negotiations between the parties resulted in an impasse, and ultimately Defendants chose not to use DPR as the general contractor on the Aria Project.

24.    DPR requested its fees due and owing under the Aria Pre-construction Agreement, including the $62,000 due under the original agreement and the $473,000 termination fee under the Aria Factor Agreement. Defendants have refused, and continue to refuse, to pay DPR the $473,000 due, despite the Aria Factor Agreement and the Aria Factor Representations. Meanwhile, ANKA-PG, ANKA-DI and ANKA (Gaslamp) LLC continue to reap the benefit of the now unearned Aria Factor discount.

## FIRST CLAIM FOR RELIEF

### (Breach of Oral Contract – Against All Defendants)

25.   DPR incorporates by reference paragraphs 1 through 24 above.

26.   On or about December 13, 2004, DPR and Defendants entered into the Aria Factor Agreement.

27.   The Aria Factor Agreement contained an implied covenant of good faith and fair dealing which obligated Defendants to perform the terms and conditions of the Aria Factor Agreement fairly and in good faith and to refrain from doing any act which would prevent or deprive DPR of the benefits of said contract.  Said covenant of good faith and fair dealing required Defendants to fairly, honestly, and reasonably perform the terms and conditions of the Aria Factor Agreement, including all of its express and implied terms.

28.   DPR has performed its obligations under the Aria Factor Agreement, except to the extent that performance was excused.

29.   Defendants have breached the Aria Factor Agreement by, among other things, failing to perform that agreement in accordance with its terms.

30.   As a proximate result of Defendants' breach of the Aria Factor Agreement, DPR has suffered damages in the amount of $473,000, plus interest.

## SECOND CLAIM FOR RELIEF

### (Breach of Oral Modification to Written Contact -- Against Defendant ANKA-CH)

31.   DPR incorporates by reference paragraphs 1 through 24 above.

32.   On or about December 13, 2004, DPR and ANKA-CH entered into the Aria Factor Agreement, which agreement modified the Pre-construction Agreement.

33.   The Pre-construction Agreement, as modified by the Aria Factor Agreement, also contained an implied covenant of good faith and fair dealing which obligated ANKA-CH to perform the terms and conditions of the Pre-construction Agreement fairly and in good faith and to refrain from doing any act which would prevent or deprive DPR of the benefits of said contract.  Said covenant of good faith and fair dealing required ANKA-CH to fairly, honestly, and reasonably perform the terms and conditions of the Aria Factor

1 Agreement, including all of its express and implied terms.

2   34.   DPR has performed its obligations under the Pre-construction Agreement,

3 except to the extent that performance is excused.

4   35.   ANKA-CH has breached the Pre-construction Agreement by, among other

5 things, failing to perform that agreement in accordance with its terms.

6   36.   As a proximate result of ANKA-CH's breach of the Pre-construction

7 Agreement, DPR has suffered damages in the amount of $473,000, plus interest.

8   **THIRD CLAIM FOR RELIEF**

9   **(Negligent Misrepresentation – Against All Defendants)**

10   37.   DPR incorporates by reference paragraphs 1 through 24 above.

11   38.   DPR is informed and believes that when Defendants made the Aria Factor

12 Representations, they knew them to be untrue, or they had no reasonable grounds for

13 believing them to be true and acted in reckless disregard of the truth.

14   39.   DPR is informed and believes that Defendants made the Aria Factor

15 Representations with the intent of inducing DPR to act in reliance on the Aria Factor

16 Representations in the manner alleged in this complaint, or with the expectation that DPR

17 would so act, or in reckless disregard that DPR would so act.  At the time Defendants made

18 the Aria Factor Representations, DPR was ignorant of the falsity of the Aria Factor

19 Representations and believed them to be true.  In reasonable reliance on the Aria Factor

20 Representations, DPR was induced to, and did incur, substantial damages and expenses,

21 including without limitation agreeing to act as the general contractor for the Alta Project for

22 an amount less than DPR would have otherwise agreed, and in providing pre-construction

23 services to Defendants for the Aria Project.

24   40.   As a direct and proximate result of Defendants' negligent misrepresentations,

25 DPR has been damaged in the amount of $473,000, plus interest.

26   **PRAYER FOR RELIEF**

27   WHEREFORE, Plaintiff DPR prays for judgment against Defendants, and each of

28 them, as follows:

As to the First, Second and Third Claims for Relief:

1.  For compensatory damages in an amount subject to proof at the time of trial; together with interest thereon at the maximum legal rate;

2.  For costs of suit incurred herein; and

3.  For such other and further relief as the Court deems proper.

DATED: January 11, 2006          SOLOMON WARD SEIDENWURM & SMITH, LLP

By: _____
RICHARD E. MCCARTHY
DANIEL E. GARDENSWARTZ
ELIZABETH C. PIETANZA
Attorneys for DPR CONSTRUCTION, INC., a
California corporation

## JURY DEMAND

Plaintiff DPR CONSTRUCTION, INC. hereby demands a jury trial.

DATED: January 11, 2006          SOLOMON WARD SEIDENWURM & SMITH, LLP

By: _____
RICHARD E. MCCARTHY
DANIEL E. GARDENSWARTZ
ELIZABETH C. PIETANZA
Attorneys for DPR CONSTRUCTION, INC., a
California corporation



# Anka (Cortez Hill) LLC
777 Sixth <sup>th</sup> Ave, Suite 105
San Diego, California, 92101
Telephone: (619) 234 6050  Fax: (619) 234 6057

October 25, 2004

Jay Leopold
DPR Construction, Inc.
6333 Greenwich Drive, Suite 170
San Diego, CA 92122

**RE:  NOTICE TO PROCEED**
**ARIA – NINTH AND ASH, SAN DIEGO, CALIFORNIA**

Dear Mr. Leopold:

Anka (Cortez Hill) LLC ("AnkaCH") is pleased to provide DPR Construction, Inc. ("DPR") this Notice to Proceed for Preconstruction Services, as proposed in Section 1 of the DPR "Proposal and Experience" dated October 15, 2004 ("Proposal"), for the ARIA condominium project ("Project")

The agreed cost for Preconstruction Services is not to exceed $62,000.00 as detailed in Section 3 of the Proposal. The Preconstruction Services are to be invoiced using the hourly rates noted and for the actual time spent up to $62,000.00. AnkaCH reserves the right to terminate the services of DPR at any time and for any reason. If the services are terminated DPR will be compensated for time spent to such termination date. Any work product, documentation or alike, supplied to or developed by DPR in relation to this Proposal and the Project will be and remain the property of AnkaCH and shall be supplied upon completion and/or termination.

It is the intent of AnkaCH and DPR to enter into a mutually agreed Guaranteed Maximum Price (GMP) contract. Further discussion will be required in regard to Section 2 "Construction Services" of the above mentioned proposal.

DPR Preconstruction Services will be performed per the attached agreed schedule (Exhibit 'A').

Please do not hesitate to call with any questions or concerns regarding this Notice.

Sincerely,
**Anka (Cortez Hill) LLC**

Andrew Boyarsky
Executive Director

*Agreed to and accepted by:*

Jay Leopold
DPR Construction, Inc.

Cc:    Ted Bumgardner, Gafcon, Inc.

EXHIBIT 1