FILED

JUN 1 1 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY JM\                    DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DPR CONSTRUCTION, INC., a
California corporation,

                        Plaintiff,

    vs.

ANKA (CORTEZ HILL) LLC, a
Delaware limited liability company;
ANKA PROPERTY GROUP, an
entity of unknown form; and ANKA
DEVELOPMENTS, INC., a Delaware
corporation,

                        Defendant.

CASE NO. 06CV0025

ORDER DENYING MOTION
TO DISMISS FOR LACK OF
JURISDICTION AND
GRANTING MOTION FOR
LEAVE TO AMEND

## I.    Introduction

Anka (Cortez Hill) LLC bring a motion to dismiss for lack of subject matter and personal jurisdiction.  DPR brings a motion to file a second amended complaint.  For the reasons set forth infra, the motion to dismiss is denied, and the motion to amend is granted.

## II.    Background

This dispute arises out of the construction and development of projects in San Diego known as the "Alta Project" and the "Aria Project."  According to the allegations of the First Amended Complaint ("FAC"), during the summer and fall of 2004, plaintiff DPR construction ("DPR") and defendants Anka (Cortez Hill) LLC, Anka Property Group and Anka Developments, Inc., entered into negotiations regarding the terms and

1   conditions of contracts whereby DPR would act as the general contractor for both the

2   Alta and Aria projects.   DPR brings claims for breach of an oral contract arising out

3   of these negotiations as well as claims for breach of an oral modification of a written

4   contract and negligent misrepresentation.

5   **III.   Analysis**

6       **A.   Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction**

7       Anka (Cortez Hill) LLC[1] seeks to dismiss the complaint as to Anka Property

8   Group on the ground that the court lacks subject matter and personal jurisdiction over

9   Anka Property Group.

10       As a preliminary matter, the moving papers confuse subject matter and personal

11   jurisdiction with capacity to be sued.  Subject matter jurisdiction is jurisdiction over

12   the claims raised in the suit.  As the notice of removal properly indicates, the court has

13   diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

14   Thus, there is no basis for dismissing the claims against Anka Property  Group for lack

15   of subject matter jurisdiction.

16       Personal jurisdiction is jurisdiction over the defendant.  A court has personal

17   jurisdiction over a defendant where the defendant has sufficient contacts with the

18   forum so that the maintenance of the suit against the defendant does not violate the due

19   process clause.  The analysis of whether the court has personal jurisdiction over a

20   defendant for claims arising out of the defendant's activities in the forum requires

21   application of a three-part test requiring consideration of numerous factors.  The

22   moving papers do not address this three-part test or the relevant factors for determining

23   personally jurisdiction. Rather, the focus of the moving papers is that Anka Property

24   Group does not exist and that one cannot sue that which does not exist.  As will be

25   seen, the issue that is raised in the moving papers is more appropriately viewed as one

26

27       [1]   Although it is highly questionable whether Anka (Cortez Hill) LLC has
standing to bring this motion on behalf of Anka Property Group, because the motion

28   is properly denied on the merits, the court need not determine whether the motion is
properly brought by Anka (Cortez Hill) LLC.

06CV0025

1   of capacity to be sued rather than subject matter or personal jurisdiction.

2        According to the moving papers, Anka Property Group is a "non-existent

3   company and is not an independent legal entity" and, as such, may not be sued.

4   Memorandum of Points and Authorities at 2:21. However, the analysis is not as simple

5   as the moving papers suggest. Certainly, something that does not exist in any sense of

6   that term cannot properly be subject to suit.  See Oliver v. Swiss Club Tell, 222

7   Cal.App.2d 528 (1963).  However, as will be seen, there is overwhelming evidence

8   suggesting that Anka Property Group exists.

9        In support of the contention that Anka Property Group does not exist, the moving

10   papers refer the court to the declaration of Alex Boyarsky, who states that Anka

11   Property Group "is not, and never has been, incorporated or otherwise formed as an

12   independent legal entity . . . ." ¶ 6. However, this does not amount to a statement that

13   Anka Property Group does not exist.  And, as will be discussed *infra*, this statement

14   does not demonstrate that Anka Property Group is not subject to suit.

15        The representation in the moving papers that Anka Property Group "is a non-

16   existent company" is disingenuous at best.  One need only perform a simple internet

17   search for "Anka Property Group" to find the website http://www.ankaproperty.com/,

18   which the moving papers acknowledge.  On the "Home" page of the website it states

19   that the Anka Property Group is a "privately-owned company principally based in

20   Sydney and with offices in Seattle and San Diego . . . ."  On the "Company Profile"

21   page of the website it states:

23             The Anka Property Group's residential experience ranges from
24             townhouses to luxury apartment towers and housing estates . . . .

25             The Anka Property Group has extensive experience in the development,
                construction and refurbishment of regional shopping centers throughout
26             Autstalia and in the United States . . .

27             The Anka Property Group is positioned to undertake commercial and
                industrial projects of any size, from major multi-storey office blocks to
28             libraries, schools and warehouse complexes . . . .

06CV0025

On the "Current Projects" page of the website it states that Alta and Aria in San Diego, California are two of Anka Property Group's current projects. Moreover, according to the "Key Management" page of the website, Alex Boyarsky is the Executive Chairman of the Anka Property Group. If one "clicks" on Mr. Boyarsky's picture, one discovers that Mr. Boyarsky established the Anka Property Group in 1968 and "re-established the Anka Property Group in 1989 . . . ." Finally, the court notes that at the bottom of each page of the website it states "COPYRIGHT © THE ANKA PROPERTY GROUP." Anka Property Group – by its own admission – most certainly "exists."

Having determined that Anka Property Group "exists," the next issue is whether it exists in a relevant legal sense so that it has the capacity to be sued. The court looks to Fed.R. Civ.P. 17(b) to determine whether Anka Property Group has the capacity to be sued. Rule 17(b) provides in relevant part:

> The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., Sections 754 and 959(a).

It is undisputed that Anka Property Group is not a corporation. See Declaration of Alex Boyarsky ¶ 6. Thus, because Anka Property Group is not a corporation, the court, pursuant to Rule 17(b), looks to California law to determine whether Anka Property Group has the capacity to be sued.

The moving papers contend that Anka Property Group cannot be sued because it is not an "independent legal entity." Although, as explained by a leading commentator, it was once the law of California that partnerships and other

- 4 -

1   unincorporated associations could not sue and be sued because they were not deemed

2   "entities" subject to suit, under present law, unincorporated associations may be sued.

3   4 Witkin California Procedure, Pleading § 59.  As explained in <u>American Alternative</u>

4   <u>Energy Partners II v. Windridge, Inc.</u>, 42 Cal.App.4th 551 (1996):

5

6

7   > In general, any person or entity has capacity to sue or defend a civil action in the California courts. This includes artificial "persons" such as corporations, partnerships *and associations*. (Weil & Brown, op. cit. supra, ¶ 2:82, p. 2-18.) *A partnership or other unincorporated association has capacity both to sue and be sued in the name it has assumed or by which it is known.* (Code Civ.Proc., § 369.5, subd. (a); <u>Tenants Assn. of Park Santa Anita v. Southers</u> (1990) 222 Cal.App.3d 1293, 1300, 272 Cal.Rptr. 361.)

8

9

10

11

12   <u>Id.</u> at 559 (emphasis added); <u>see</u> Cal. Civ. Code § 369.5(a) (providing that an

13   "unincorporated association, whether organized for profit or not, may sue and be sued

14   in the name it has assumed or by which it is known").  Thus, "[i]n California, an

15   unincorporated association is accorded entity status, *as a defendant only*, by virtue of"

16   Code Civ. Proc. § 369.5.[2] <u>Oliver</u>, 222 Cal.App.2d at 540.

17        'Unincorporated association' means an unincorporated group of two or more

18   persons joined by mutual consent for a common lawful purpose, whether organized for

19   profit or not."   Cal.Corp.Code § 18035.  "'Person' includes a natural person,

20   corporation, partnership, or other unincorporated organization, government, or

21   governmental subdivision or agency, or any other entity." Cal. Corp. Code § 18030.

22   According to Exhibit C, the "proprietors" of Anka Property Group are Anka

23   Management Party Ltd. and Liberty Grove (Concord) Party Ltd.  Moreover, if one goes

24   to the website http://www.ankaproperty.com/ and "clicks" on "Key Management" and

25   then "Alex Boyarsky," one discovers that the Anka Property Group was "re-

26   established" in 1989 "to develop two large retail centres . . . ."  Thus, it would appear

27

28   [2]  <u>Oliver</u> refers to Cal.Civ.Code § 388; however, a review of the Law Revision Commission Comments to § 388 reveals that the former language of § 388 is restated in § 369.5.

1  that Anka Property Group's proprietors joined by mutual consent for the common

2  lawful purpose of developing land for commercial purposes. Because at this juncture,

3  the evidence before the court suggests that Anka Property Group falls within the

4  definition of an unincorporated association, the court cannot conclude as a matter of

5  law that Anka Property Group does not have the capacity to be sued.

6        Contrary to the assertions of the reply, <u>California Clippers, Inc. v. U.S. Soccer</u>

7  <u>Football Ass'n</u>, 314 F.Supp. 1057 (C.D. Cal. 1970) does not support the position that

8  Anka Property Group is not an unincorporated association. In that case, in determining

9  that the International Games Committee was not an unincorporated association, it relied

10  on the fact that, *inter alia*, the International Games Committee had "no office or place

11  of business, no mailing address . . . and has never transacted any business." <u>Id.</u> at 1068.

12  Here, however, there is sufficient evidence that Anka Property Group has an office at

13  625 Broadway, Suite 625, San Diego, CA 9210, and that Anka Property Group has

14  conducted business both inside and outside the State of California.    <u>See</u>

15  http://www.ankaproperty.com/ ("Contract Us" and "Company Profile"). Moreover,

16  Anka   Property   Group   even   has   officers   and   directors.    <u>See</u>

17  http://www.ankaproperty.com/ ("Key Management"). Finally, according to its website,

18  Anka Property Group holds copyrights.

19        Moreover, even if Anka Property Group does not fall within the definition of

20  "unincorporated association" and truly is nothing more than a fictitious business name,[3]

21  this does not mean that Anka Property Group is not properly named as a defendant in

22

23  _____

24      [3] The reply attempts to distinguish between a "business name" under Australian law and a "fictitious business name" under California law. However, no relevant

25  distinction has been identified. Under Australian law, a "business name" is "a name or title under which a person or other legal entity may conduct its business." <u>See</u>

26  Defendants' Exhibit B. Under California law, a fictitious business name is a name under which business is conducted that does not on its face identify the actual person

27  or entity conducting the business. <u>See generally</u> 9 Witkin Summary of California Law, Partnership § 2; Cal. Bus. & Prof. Code § 17900 *et seq.* The court fails to see any

28  relevant distinction between Australian and California law. Moreover, it goes without saying that simply because Anka Property Management was not actually registered as a fictitious business name does not mean that it is not a fictitious business name.

1   this action. Under California law, a lawsuit may be brought by suing a defendant under
2   a fictitious business name. See Pinkerton's, Inc. v. Superior Court, 49 Cal.App.4th
3   1342, 1349 (1996). Moreover, although the fictitious name statute precludes a plaintiff
4   who transacts business under a fictitious business name from maintaining a suit unless
5   the fictitious business name has been registered, it does not preclude suit against a
6   defendant where the defendant has not complied with the registration statute. 4 Witkin,
7   California Procedure, Pleading § 84 at p. 142. Thus, that Anka Property Group was not
8   registered as a fictitious business name as required by California law does not render
9   Anka Property Group immune from suit.  In summary, there is no legal basis for
10   granting the motion to dismiss for lack of jurisdiction.

11       In their opposition, plaintiffs contend that, if Anka Property Group is merely a
12   fictitious business name, the court should substitute Anka Management Pty, Ltd. and
13   Liberty Grove Pty Ltd. as the real party in interest or allow DPR to amend its pleadings
14   to allege that those entities are the real parties in interest for Anka Property Group.  At
15   this juncture, the court cannot determine as a matter of law whether Anka Property
16   Group is an unincorporated association or simply a fictitious business name.
17   Accordingly, the parties are hereby ordered to meet with the magistrate judge for the
18   purpose of determining a schedule for conducting discovery limited to this issue,
19   should DPR believe such discovery is necessary.  After completing discovery or if no
20   additional discovery is sought, DPR may either amend the complaint as to Anka
21   Property Group as it believes appropriate or seek relief from the court through an
22   appropriate motion.

23       The court notes that, if it is determined that Anka Property Group is merely a
24   fictitious business name, this does not mean, as the reply contends, that Anka
25   Management Pty, Ltd. and Liberty Grove (Concord) Pty Ltd. would not properly be
26   named as parties in this action.  The representations of the reply not withstanding,
27   entities cannot, by doing business under a business name, escape liability for their
28   actions. See Pinkerton's, 49 Cal.App.4th at 1348-49 (explaining that although entity

1   may be sued by its fictitious name, once the identity of the entity using the name is
2   discovered, all further proceedings should proceed in that entity's name).  Thus, it will
3   behoove all involved to engage in the discovery process in good faith.

4   **B.    Motion to Amend**

5       DPR seeks leave to file a second amended complaint that adds a claim for
6   intentional misrepresentation.  In determining whether to grant leave to amend, courts
7   should consider "'the presence or absence of undue delay, bad faith, dilatory motive,
8   repeated failure to cure deficiencies by previous amendments, undue prejudice to the
9   opposing party and futility of the proposed amendment.'"  United States v. Smithkline
10  Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting Moore v. Kayport
11  Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).  Where, as here, a party is
12  seeking leave to add claims rather than parties, leave should be "granted more
13  freely . . . ." Union Pacific R.R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th
14  Cir. 1991); see also Johnson v. American Airlines, Inc., 834 F.2d 721, 724 (9th Cir.
15  1987) ("Although we review a denial of leave to amend a pleading for abuse of
16  discretion, we require courts to be generous in permitting amendment.").  Moreover,
17  "[w]here there is a lack of prejudice to the opposing party and the amended complaint
18  is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse
19  of discretion to deny such a motion." Howey v. United States, 481 F.2d 1187, 1190-91
20  (9th Cir. 1973).
21
22      *Undue Delay*

23      There is no basis for concluding that DPR unduly delayed in bringing its motion.
24  It appears that DPR did not have a basis for asserting this claim for intentional
25  misrepresentation until it took the deposition of Andrew Stringer.  DPR did not delay
26  in attempting to schedule the deposition, and any delay in the scheduling of the
27  deposition is not attributable to DPR.  The deposition was taken on November 28,
28  2006, and counsel received a copy of the transcript of the deposition on December 20,

1  2006. Counsel for DPR contacted defendant's counsel on December 27, 2006 to see
2  if defendants would stipulate to DPR amending its complaint to include this claim. On
3  January 3, 2007, DPR's counsel was informed that defendants would not stipulate. The
4  motion for leave to amend was filed on January 11, 2007. Delay is not a factor that
5  would justify denying leave to amend in this case. Cf. Howey, 481 F.2d 1187 (holding
6  that district court abused its discretion in denying leave to amend even though the party
7  seeking to amend waited five years from commencement of action and motion was
8  brought on the second day of trial).

9      *Bad Faith/Dilatory Motive*

10     Defendants do not argue, and there is no basis for concluding, that the motion
11  to amend is brought in bad faith or for a dilatory motive. Thus, this factor does not
12  weigh in favor of denying the motion.

13

14     *Repeated Failure to Correct Deficiencies with Previous Amendments*

15     DPR is not attempting to correct a previous deficiency in the complaint but,
16  rather, is attempting to add a new claim for relief. Thus, this factor does not weigh in
17  favor of denying the motion.

18     *Futility of Amendment*

19     "A proposed amendment is futile only if no set of facts can be proved under the
20  amendment to the pleadings that would constitute a valid and sufficient claim or
21  defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (1988); see also Sweaney
22  v. Ada County, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting Miller). However,
23  futility also "includes the inevitability of a claim's defeat on summary judgment."
24  Johnson, 834 F.2d at 724 (9th Cir. 1987)

25     Here, defendants contend that the proposed claim for intentional
26  misrepresentation fails to plead fraud with particularity as required by Rule 9(b), which
27  provides in relevant part:
28

06CV0025

1
2

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

3
4
5
6
7
8
9

"It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003). "'[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'" <u>Id.</u> (quoting <u>Hayduk v. Lanna</u>, 775 F.2d 441, 443 (1st Cir.1985)).

10
11
12

As explained in <u>Odom v. Microsoft Corp.</u>, — F.3d ----, 2007 WL 1297249 (9th Cir. 2007):

13
14
15
16
17
18

> "Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1400 (9th Cir.1986) (internal quotation marks omitted) (quoting <u>Bosse v. Crowell Collier & MacMillan</u>, 565 F.2d 602, 611 (9th Cir.1977))."[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Id.</u> at 1401; <u>see also Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 541 (9th Cir.1989).

19
20
21
22

<u>Id.</u> at *12. In addition, a plaintiff must allege facts that indicate why the statement is fraudulent. As explained in <u>In re GlenFed, Inc. Securities Litigation</u>, 42 F.3d 1541 (9th Cir. 1994), *superceded by statute on other grounds*:

23
24
25
26
27
28

> The language of Rule 9(b) itself reveals that it is more than simply a reiteration of requirements stated elsewhere. Rule 9(b) requires particularized allegations of the circumstances constituting fraud. The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. *Accordingly, our cases have consistently required that circumstances indicating falseness be set forth.*

06CV0025

<u>Id.</u> at 1547-48 (emphasis added) (footnote omitted) .

Here, according to the proposed amended complaint:

> Defendants expressly represented to DPR that: (1) that DPR would be entitled to recoup the $473,000 if DPR was not selected as the general contractor on the Aria Project; (2) the Aria Factor Agreement had been approved by senior management at ANKA-PG and/or ANKA-DI; (3) the parties would confirm their oral agreement in writing after the year-end holiday season; and (4) there were circumstances under which DPR would be entitled to receive a credit back of the $473,000 discount ("the Aria Factor Representations").

Proposed Second Amended Complaint ¶ 18.  These are the representations that are the basis of the intentional misrepresentation claim DPR seeks to add.  <u>See</u> Proposed SAC ¶ 42.  Defendants are correct that the Proposed SAC fails to allege the specific individual or individuals who made the Aria Factor Representations and fails to allege why the Aria Factor Representations were false or misleading.  Nonetheless, based on the assertions and evidence contained in DPR's papers, it appears that the DPR could easily cure this deficiency.  <u>See</u> Memorandum of Points and Authorities in Support of Motion for Leave to File Second Amended Complaint at 5:3-7:17 Thus, it would not be futile to allow plaintiffs to amend the complaint.

Defendants also contend that leave to amend should be denied because the evidence does not support the conclusion that defendants made a false representation.  However, at this juncture, defendants have failed to demonstrate that it is inevitable that this claim will be defeated on summary judgment.  <u>See</u> <u>Johnson</u>, 834 F.2d at 724.

*Undue Prejudice*

Finally, the court must determine whether allowing DPR to amend would cause defendants "*undue* prejudice." <u>Smithkline Beecham, Inc.</u>, 245 F.3d at 1052 (emphasis added).  The burden is on defendants to demonstrate undue prejudice.  <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 187 (9th Cir. 1987).  "Bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to 'facilitate a proper

- 11 -

06CV0025

1  disposition on the merits.'" <u>Hurn v. Retirement Fund Trust of Plumbing, Heating and</u>

2  <u>Piping Industry of Southern California</u>, 648 F.2d 1252, 1254 (9th Cir. 1981) (quoting

3  <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957)).

4      Defendants have failed to demonstrate the they will be unduly prejudiced so that

5  it is appropriate to deny the motion to amend.  Defendants contend that, if leave to

6  amend is granted, they will be prejudiced because they will be required to engage in

7  additional discovery, evaluation and investigation in order to address this new theory.

8  However, almost any time a plaintiff adds a new theory of relief, the defendant will be

9  required to engage in additional discovery, evaluation and investigation in order to

10 address the new theory.  A review of the case law reveals that there must be something

11 "more" to warrant the denial of a motion to amend.

12     For example, in <u>Wood v. Santa Barbara Chamber of Commerce, Inc.</u>, 705 F.2d

13 1515 (9th Cir. 1983), the Ninth Circuit affirmed the denial of a motion for leave to

14 amend on the ground that granting leave to amend would have caused undue prejudice

15 to the defendants.  It noted that the amended complaint was offered more than two

16 years after the filing of the original complaint and "inverted the legal theory under

17 which the defendants were to be charged with liability." <u>Id.</u> at 1520.  It concluded that

18 "[b]y itself, the last-minute changes in trial preparation this would have required might

19 not have been unduly prejudicial." <u>Id.</u>   However, it concluded that "there was

20 sufficient prejudice to deny the motion to amend in light of the futility of the motion

21 and the apparent bad faith with which it was offered." <u>Id.</u>

22     Similarly, in <u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 194 F.3d 980

23 (9th Cir. 1999), the motion to amend came several months after the stipulated deadline

24 for amending, the plaintiff had been considering the amendment three months prior to

25 the expiration of the stipulated deadline, and the new allegations did not rely on facts

26 that were unavailable prior to the expiration of the stipulated deadline.  Moreover, the

27 amendment would require the significant discovery by the defendant. <u>See id.</u> at 986

28

06CV0025

1    (noting that the defendant, which registered domain names, would have to conduct
2    discovery on several new domain-name registrants and would have to conduct
3    discovery as to whether each domain-name registrant was diluting the plaintiff's
4    service mark).

5        Here, as explained *supra*, there is no evidence of bad faith, and the amendment
6    is not futile.  The new claim for intentional misrepresentation is similar to the existing
7    claim for negligent misrepresentation, and the motion to add this claim was brought
8    immediately after the basis for the claim was discovered.  The facts upon which that
9    claim is based are uniquely in the defendants' possession, which suggests that little, if
10   any, additional discovery will be needed on the merits.    However, to lessen any
11   potential prejudice, the court will accommodate any reasonable request for additional
12   discovery and will defer consideration of the current motion for summary judgment
13   until defendants have time to complete the additional discovery and file a motion for
14   summary judgment regarding the newly-added claim.  Moreover, to the extent that
15   discovery may be needed on the issue of punitive damages, it would be appropriate to
16   postpone such discovery until after resolution of all summary judgment motions.  Then
17   and the parties could work together with the magistrate to establish an appropriate
18   discovery schedule should discovery remain necessary.  Defendants have simply failed
19   to demonstrate the type of undue prejudice that would warrant the denial of this
20   motion.

21       *Summary of Factors*
22
23       Having carefully considered the relevant factors as well as Rule 15(a)'s strong
24   policy of facilitating the disposition of cases on the merits, it is appropriate to allow
25   DPR to amend the complaint to add a claim for intentional misrepresentation.  There
26   is no evidence of bad faith or undue delay.    Moreover, it is not inevitable that
27   amendment would be futile.  Finally, although defendant may experience some
28   prejudice from the amendment, such prejudice, in light of the other factors and the

1    court's willingness to accommodate defendants as they prepare to address the newly-

2    added claim, does not amount to the type of undue prejudice that would warrant the

3    denial of the motion to amend.

4

5    **IV.    Conclusion**

6

7            The motion to dismiss for lack of subject matter and personal jurisdiction is

8    denied.  The motion to amend is granted.  DPR may, within 45 days of the filing of this

9    opinion, file an amended complaint that (1) adds a claim for intentional

10   misrepresentation consistent with this opinion and (2) adds any allegations regarding

11   Anka Property Group that DPR deems necessary.

12           **IT IS SO ORDERED.**

13

14   DATED:  ___6 | 11___ ,2007

15

16

17                                    **JOHN S. RHOADES, SR.**
                                     United States District Judge
18   cc:     All parties

19

20

21

22

23

24

25

26

27

28

06CV0025



THE ANKA PROPERTY GROUP

# ANKA PROPERTY GROUP

For well over thirty years, The Anka Property Group (Anka) has brought to the development industry a unique blend of experience, innovation and entrepreneurship.

A privately owned company principally based in Sydney and with offices in Seattle and San Diego, Anka was established in 1968 by Alex Boyarsky. The Group's projects, primarily developed on its own behalf, span the Pacific and include low and high rise home units, condominium towers, community and neighborhood centers, office buildings, major retail centers, light industrial complexes, schools and hospitals.

Anka brings experience, capability and commitment to developing the best solutions for planning, design, financing, project management, construction and marketing

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME



THE ANKA PROPERTY GROUP

# ANKA PROPERTY GROUP

management, construction and marketing projects.

Australian and international awards have been earned by Anka as recognition for outstanding innovation and design, especially in regards to the Liberty Grove project, a new residential suburb in Sydney's inner-west. The outstanding nature and quality of this project was recognized by the prestigious Urban Development Institute of Australia as the country's 'best medium density development' and the internationally acclaimed FIABCI Prix d'Excellence Awards.

Major shopping centers and condominium projects developed in both Australia and the United States have also established Anka's reputation for outstanding quality and design in these highly competitive markets.

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

EXPERIENCED. INNOVATIVE. DEDICATED

## COMPANY PROFILE

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

### Residential Developments

The Anka Property Group's residential experience ranges from townhouses to luxury apartment towers and housing estates. To each of these projects the Group brings a unique ability to analyse market trends and develop a concept combining the best in design, financing, construction and marketing.

### Retail Developments

The Anka Property Group has extensive experience in the development, construction and refurbishment of regional shopping centres throughout Australia and in the United States.

### Commercial Developments

The Anka Property Group is positioned to undertake commercial and industrial projects

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

EXPERIENCED. INNOVATIVE. DEDICATED.

ANKA

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

## COMPANY PROFILE

design, financing, construction and
marketing.

### Retail Developments
The Anka Property Group has extensive
experience in the development, construction
and refurbishment of regional shopping
centres throughout Australia and in the
United States.

### Commercial Developments
The Anka Property Group is positioned to
undertake commercial and industrial projects
of any size, from major multi-storey office
blocks to libraries, schools and warehouse
complexes. Anka generally develops its own
projects, but will also work in joint venture
partnership with specialist organisations in
order to ensure the best possible outcome for
a project.

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

## KEY MANAGEMENT

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

**Alex Boyarsky**
Executive Chairman

**Andrew Boyarsky**
Managing Director

**Vera Boyarsky**
Executive Director

**Larisa Goldguber**
Financial Controller

**David Bennett**
Senior Project Manager, Australia

**Andrew Stringer**
Senior Vice President, USA

**Jarrod Milne**
Vice President Construction, Seattle

Select an image, above, or click on the names, right, for further information.

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

**KEY MANAGEMENT**

ALEX BOYARSKY

B Bldg, MBA University of NSW
Executive Chairman

Alex Boyarsky's experience in the property development field, as a builder, developer, project manager and investor, spans nearly 40 years. After establishing the Anka Property Group in 1968, Mr Boyarsky focused on the West Australian market where he won tenders for a large number of public works projects, including schools and libraries.

He worked in the same market for several years as both a developer and constructor of private hospitals and hotels. After 10 years he turned his attention to retail and residential projects in Queensland and Sydney, including luxury apartment towers and large shopping centres. In the mid-1980s Mr Boyarsky merged his interests with a public company,

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

**Alex Boyarsky**
Executive Chairman

**Andrew Boyarsky**
Managing Director

**Vera Boyarsky**
Executive Director

**Larisa Goldguber**
Financial Controller

**David Bennett**
Senior Project Manager, Australia

**Andrew Stringer**
Senior Vice President, USA

**Jarrod Milne**
Vice President Construction, Seattle



THE ANKA PROPERTY GROUP

### ALEX BOYARSKY

West Australian market where he won tenders for a large number of public works projects, including schools and libraries.

He worked in the same market for several years as both a developer and constructor of private hospitals and hotels. After 10 years he turned his attention to retail and residential projects in Queensland and Sydney, including luxury apartment towers and large shopping centres. In the mid-1980s Mr Boyarsky merged his interests with a public company, of which he became managing director.

He re-established the Anka Property Group in 1989 to develop two large retail centres in Seattle, Washington, and, later, the Liberty Grove lifestyle estate in Sydney's inner-west. A leading conceptual developer, Mr Boyarsky has been involved in over 200 major projects.

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

## KEY MANAGEMENT

**Alex Boyarsky**
Executive Chairman

**Andrew Boyarsky**
Managing Director

**Vera Boyarsky**
Executive Director

**Larisa Goldguber**
Financial Controller

**David Bennett**
Senior Project Manager, Australia

**Andrew Stringer**
Senior Vice President, USA

**Jarrod Milne**
Vice President Construction, Seattle

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

## CURRENT PROJECTS

**The Adelaide**
Seattle
Washington State, USA

**Alta**
Gaslamp District, San Diego
California, USA

**Aria**
Cortez Hill, San Diego
California, USA

**Darlinghurst**
Sydney
New South Wales, Australia

**Argenta**
San Francisco
California, USA

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

ANKA

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

ALTA

Gaslamp District, San Diego
California USA

A mixed use development of 210,000 sf over
21 storeys incorporating 179 condominiums
made up of a combination of Studios, 1 and
2 bedroom units ranging from 500 sf to 1,200
sf. There is retail of 1K,000 sf on the ground
floor and 3 levels of basement parking.
Located in downtown San Diego, Alta is just
2 blocks back from the new Padres Ballpark,
in the heart of the Gaslamp District. Featuring
views of the city skyline, Balboa Park and San
Diego Bay.

www.alta-sandiego.com

# CURRENT PROJECTS

**The Adelaide**
Seattle
Washington State, USA

**Alta**
Gaslamp District, San Diego
California, USA

**Aria**
Cortez Hill, San Diego
California, USA

**Darlinghurst**
Sydney
New South Wales, Australia

**Argenta**
San Francisco
California, USA

COPYRIGHT © 2003 THE ANKA PROPERTY GROUP



THE ANKA PROPERTY GROUP

**ARIA**

**Cortez Hill, San Diego**
**California USA**

Aria is an architecturally significant 24 storey condominium project comprising 137 luxury one, two and three bedroom residences in San Diego's exclusive Cortez Hill neighborhood. The development has panoramic views overlooking Downtown, the Bay and Coronado Bridge. World renowned Balboa Park is only a short stroll away, providing idyllic recreational opportunities in a centrally located urban environment. The building has numerous amenities including lap pool and spa, community room and concierge.

**www.aria-sandiego.com**

COMPANY PROFILE
KEY MANAGEMENT
CURRENT PROJECTS
PROJECT GALLERY
CONTACT US
HOME

# CURRENT PROJECTS

**The Adelaide**
Seattle
Washington State, USA

**Alta**
Gaslamp District, San Diego
California, USA

**Aria**
Cortez Hill, San Diego
California, USA

**Darlinghurst**
Sydney
New South Wales, Australia

**Argenta**
San Francisco
California, USA

COPYRIGHT © 2005 THE ANKA PROPERTY GROUP

